MICHAEL T. HULL *vs.* ATTLEBORO SAVINGS BANK & others.[1] No. 86-892. February 23, 1988. *Practice, Civil*, Complaint, Summary judgment. *Bankruptcy*, Stay of other proceedings. *Mortgage*, Real estate, Foreclosure.

After our decision in this matter (see *post* 1104 [1987]), we granted the plaintiff's petition for rehearing. We conclude that there is a genuine issue of material fact concerning compliance by the defendant Attleboro Savings Bank (the bank) with the notice provisions of G. L. c. 244, § 14, and reverse the judgment.

In 1982, the bank commenced foreclosure proceedings on the plaintiff's property. Some three years later, the plaintiff brought this action against the bank and the subsequent purchasers of the property (see note 1, *supra*) seeking to set aside the foreclosure and the subsequent sales. In his complaint (drafted pro se), the plaintiff alleged that the bank had failed to give him notice of the foreclosure proceedings and that the bank had acted in bad faith in not seeking the appointment of a guardian for him when it knew or should have known that he was incapable of protecting his interests. The defendants answered to the complaint and also filed motions for summary judgment. The plaintiff thereafter filed affidavits in opposition to the motions as well as a motion for leave to amend his complaint by substituting an amended complaint drafted by counsel. The amended complaint more artfully repeated the plaintiff's earlier complaint and asserted additional claims: (1) that the bank had violated the automatic stay provision of 11 U.S.C. § 362(a)(1) (1982) (the Bankruptcy Act); (2) that the bank had sold the property for far less than its fair value; and (3) that these acts by the bank constituted bad faith and violations of G. L. c. 93A. It appears from the judge's memorandum of decision that he took no action on the motion to

---

[1] Homemakers Financial Services, Inc., Edward F. Casey, Edward J. Casey, and Maria Y. Casey.

amend the complaint based on his view that, even if the motion were allowed, the defendants would nonetheless be entitled to summary judgment. We consider the plaintiff's unverified amended complaint to the extent it assists us in comprehending his complaint upon which the defendants' motions are based. See *Godbout* v. *Cousens*, 396 Mass. 254, 262-263 (1985).

1. *Violation of 11 U.S.C. § 362*. The plaintiff alleges that he sought relief in the United States Bankruptcy Court for the District of Massachusetts in May of 1982. Under 11 U.S.C. § 362(a), the mere filing of the petition operates as an automatic stay of certain acts specified in that section. See generally *Amonte* v. *Amonte*, 17 Mass. App. Ct. 621, 623-624 (1984). While the stay was in effect, the bank filed a petition in the Land Court to comply with the Soldiers' and Sailors' Civil Relief Act (the Act). See 50 U.S.C. Appendix § 532(3) (1982). Apparently, compliance with the Act was deemed effective on August 17, 1982. The bankruptcy petition was dismissed on August 24, 1982, thereby ending the automatic stay. See 11 U.S.C. § 362(c)(2)(B) (1982). The bank made entry upon the land for possession on August 25, 1982.

Assuming without deciding that the bank violated the provisions of 11 U.S.C. § 362(a), it does not follow that the foreclosure and the foreclosure sale were void. As alleged by the plaintiff, the only action taken by the bank during the automatic stay period was to commence proceedings under the Act. The sole issue presented in such proceedings is whether any interested party is entitled to the benefits of the Act by reason of military service. See *Beaton* v. *Land Court*, 367 Mass. 385, 390 (1975). The plaintiff has never claimed that he was entitled to the benefits of the Act. Rather, his argument is that, as matter of law, the foreclosure is void because of the action taken by the bank during the automatic stay period. See *Irving Levitt Co.* v. *Sudbury Management Associates, Inc.*, 19 Mass. App. Ct. 12, 16 (1984). Because the plaintiff makes no claim of entitlement to the benefits of the Act, it gains him nothing to nullify the proceedings in the Land Court. "If a foreclosure were otherwise properly made, failure to comply with the 1940 Relief Act would not render the foreclosure invalid as to anyone not entitled to the protection of that act. *Guleserian* v. *Pilgrim Trust Co.*, 331 Mass. 431, 433-434 (1954). See Park, Conveyancing, § 406 (1968 and Supp. 1974)." *Beaton* v. *Land Court*, 367 Mass. at 390. See also *Boston Five Cents Sav. Bank* v. *Johnson*, 3 Mass. App. Ct. 790 (1975); Park, Real Estate Law § 522 (1981 and Supp. 1987).

2. *Mental incompetency*. The plaintiff claims that there is a factual dispute on the issue whether the bank violated his statutory (G. L. c. 244, § 14 through § 17) and due process rights by foreclosing on his property when he was mentally incompetent without first seeking the appointment of a guardian. Although the plaintiff states in his complaint that he was "adjudicated insane" in March of 1980 for a mental illness "in remission since 1984," we do not see the existence of facts which, if established at trial,

would entitle him to relief on this claim. See *Kaitz* v. *Foreign Motors, Inc.*, *ante* 198, 200, 202 (1987); *Orfirer* v. *Biswanger*, *ante* 928, 930-931 (1987). The affidavits submitted by the plaintiff in opposition to the motions speak to the facts that at the times relevant to the events of 1982, the plaintiff (then an attorney engaged in the practice of law) had not made payments on the mortgage note to the bank in over two years, that his behavior was "erratic" and "bizarre," that because of this behavior, his business associate and secretarial staff would no longer work with him, that in September (of 1982) he was admitted to a facility in Massachusetts known as Westwood Lodge, that in early September (1982) the plaintiff's former business associate told a loan officer at the bank that the plaintiff had "financial" and "emotional problems," and that these two had a "further" conversation "relative to . . . [the plaintiff] being institutionalized for his emotional problems in the month of September, 1982."

During his 1985 deposition, the plaintiff stated that, at the times pertinent hereto, he was suffering from chronic depression and that there had been a newspaper article which the bank must have seen, reporting that in August, 1982, he had been indicted on charges of stealing his clients' funds and that he was being held without bail for a psychiatric evaluation. The plaintiff further related that, at that time, he was involved in drug use in his attempts to cope with his depression. He stated that, after the indictment and upon the "recommendation" of his attorney and the court, his parents had him hospitalized at Westwood Lodge on or about September 9, 1982. Prior to that date, however, and after the bank had made entry upon the premises, he sought and obtained permission to enter the house to take his clothing. He (apparently) was at Westwood Lodge at the time of the foreclosure sale of the property to the defendant Homemakers Financial Services, Inc. (see note 1, *supra*).

Based upon these facts and *Covey* v. *Somers*, 351 U.S. 141, 146-147 (1956), the plaintiff claims that there exists a question whether the bank, in light of the circumstances known to it, should have sought the appointment of a guardian to protect his interests during the foreclosure and sale. Accepting all the plaintiff's factual claims as true (see *Kaitz* v. *Foreign Motors, Inc.*, *supra* at 200, 202), we see no error in allowing the defendants' motions on this issue. See *Commonwealth* v. *Olivo*, 369 Mass. 62, 69 & 69 n.5 (1975); *Boston* v. *Ditson*, 4 Mass. App. Ct. 323, 326 (1976).

3. *Good faith and reasonable diligence.* In considering the plaintiff's claim that the bank violated its duty as a mortgagee, we, again, do not take into account the allegations set out in his unverified amended complaint. See *Godbout* v. *Cousens*, 396 Mass. at 262-263. We confine our review to his complaint, deposition, and the affidavits. Taken in the light most favorable to the plaintiff, these materials show: (a) that after the bank took possession of the property, it refused to allow the plaintiff onto the premises; (b) that the bank hired an armed security guard to protect the property twenty-

four hours a day; (c) that the bank failed to repair a broken glass door, to cut the grass, and to clean the inside of the house; (d) that the bank should have advertised the property more vigorously prior to its sale; and (e) that the defendant Homemakers Financial Services, Inc. (see note 1, *supra*) purchased the property from the bank for $125,000 and sold it to the other defendants for $170,000. These facts are not sufficient (see *Kaitz* v. *Foreign Motors, Inc.*, *supra* at 200, 202) to create a factual question upon which reasonable minds could differ relative to the reasonableness of the bank's conduct in regard to the foreclosure sale. See *DesLauries* v. *Shea*, 300 Mass. 30, 39 (1938); *Sher* v. *South Shore Bank*, 360 Mass. 400, 402-403 (1971). Compare *Danielczuk* v. *Ferioli*, 7 Mass. App. Ct. 914 (1979); *Mutual Bank for Sav.* v. *Silverman*, 13 Mass. App. Ct. 1059, 1061 (1982). There was no error in allowing the defendants' motions on this claim.

4. *Notice pursuant to G. L. c. 244, § 14.* In his complaint, the plaintiff alleged that the bank failed to comply with the notice provisions of G. L. c. 244, § 14. The bank answered, denying the allegation. In moving for summary judgment, the bank relied upon the pleadings and the plaintiff's deposition, which is silent on this issue. The plaintiff stated in his affidavit in opposition to the motion that he "never received notice or was notified at any time that the Bank had filed a complaint in Land Court or that the Bank was going to foreclose on the property." There here exists a disputed question of fact: whether thirty days prior to the date of the foreclosure sale, the bank sent notice thereof to the plaintiff. See G. L. c. 244, § 14. In denying the plaintiff's allegation, the bank placed the claim in issue. It was the bank's burden on its motion to show that, in fact, it had sent notice to the plaintiff as required by the statute. See *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 371, cert. denied, *Bailey* v. *Bellotti*, 459 U.S. 970 (1982); *Davidson Pipe Supply Co.* v. *Johnson*, 14 Mass. App. Ct. 518, 524 (1982). Had the bank shown on its motion that it did mail the requisite notice, the plaintiff's averment of nonreceipt would have been irrelevant to the issue whether the bank had satisfied its obligation in accordance with the statute. See *Mutual Bank for Sav.* v. *Silverman*, 13 Mass. App. Ct. at 1060. Cf. *Commonwealth* v. *Johnson*, 348 Mass. 586, 588 (1965). However, reading the plaintiff's complaint and affidavit with the bank's simple denial, we conclude that a question of material fact exists on the issue of notice.

5. *The motion to amend the complaint.* As earlier noted, because of the conclusions the judge reached on the motions for summary judgment, he found it unnecessary to rule upon the motion to amend the complaint. Our decision also would dispose of the motion to amend but for the fact that the plaintiff seeks to include a count under G. L. c. 93A. As there must be further proceedings on one of the plaintiff's claims (the bank's alleged failure to send notice), we leave it to a judge on remand to consider (if asked) whether the plaintiff should be allowed to amend his complaint by adding an allegation that the failure (if any) to send notice constitutes a violation of G. L. c. 93A.

The judgment is reversed, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

*Ronald F. Kehoe* (*A. Neil Hartzell* with him) for the plaintiff.
*Stephen D. Clapp* for Attleboro Savings Bank.
*Max Volterra* for Edward F. Casey & others.